STATE of Missouri, Plaintiff-Respondent,

v.

James Lee STEWART,
Defendant-Appellant.

No. 9953.

Missouri Court of Appeals,
Springfield District.

Oct. 6, 1976.

Jerry D. Mee, Springfield, for defendant-appellant.

John C. Danforth, Atty. Gen., Charles L. Howard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before HOGAN, P. J., FLANIGAN, J., and CAMPBELL and PYLE, Special Judges.

BEN F. PYLE, Special Judge.

Appellant James Lee Stewart, hereinafter referred to as defendant, was charged with possession of more than 35 grams of marihuana (§ 195.017, subd. 2(4)(j), RSMo Supp.1973). The jury found the defendant guilty of possession of a controlled substance, and he was sentenced to a term of five years in the custody of the Missouri Department of Corrections. Defendant appeals from this conviction claiming three assignments of error.

On October 1, 1974, at about 5:00 a. m., Mary Bryant called the Springfield, Missouri Police Department concerning possible vandalism to her son's car which was parked in front of her house at 2130 East Cairo. Officers Baugh and Youngblood arrived to investigate. Mrs. Bryant at that time mentioned certain activities to the officers concerning the house across the street at 2127 East Cairo; that there was considerable traffic coming and going, and people going to the house in the early morning hours and remaining only a short time. At that time a U–Haul van was observed parked in the driveway of the premises and a car parked on the street in front. Later that morning around 9:00 a. m., Mrs. Bryant observed a blond-haired person get out of a vehicle in front of 2127 East Cairo and go into the house. She at no time saw the defendant prior to his arrest that afternoon. Mrs. Bryant later saw the U–Haul

van backed up to a door on the west side of the house, but she never saw anyone around the van. About 3:00 p. m. she again called the police. Officers Baugh and Youngblood responded. Upon arriving, they went to the premises at 2127 East Cairo and looked in the front window of the van and saw what they believed to be a marihuana stalk sticking between the sidewall of the van and a panel dividing the driver's compartment and the back cargo area. The rear door of the van was closed. On the steps between the rear door of the van and the door leading into the house they observed what they believed to be marihuana. The officers knocked on the back door but received no response. They went to the front door and found the screen closed and the door standing open. Through the open door they could see the defendant lying on a divan ten feet from the front door. They knocked but received no response. The officers then entered, and one of them spoke to the defendant but got no response. Upon hearing a noise, one of the officers went through the kitchen to a back room. No one else was found in the house, but the floor of the back room contained a large quantity of freshly cut marihuana. This room was approximately ten feet square. The officer returned to the living room.

The officers woke the defendant and placed him under arrest for possession of marihuana, handcuffed him, advised him of his rights and searched him. No marihuana was found in the living room where the defendant was sleeping nor on his person. The room where the marihuana was found could not be seen from the living room. At the time defendant was searched, two keys were found in his pocket, one of which fit a padlock on the rear door of the van. This padlock was not locked and the rear door of the van was opened by the officers who discovered that it was about one-third full of marihuana of the same type as was found inside the premises. The ignition key to the van was found in the switch. The marihuana in the house and in the van had a combined weight of approximately 380 pounds. Defendant did not question the chain of custody or the chemical analysis of the marihuana. After his arrest he was transported to the Springfield Police Department where he signed a waiver of rights form and was placed in a cell. The next morning Detective John Smith went to the defendant's cell and the following conversation was testified to by Smith at the instance of the Prosecuting Attorney, Mr. Upp:

Q. [W]ould you tell us what, if anything, the defendant said to you in your conversation with him on the 2nd of October, 1974?

A. After I asked him if he knew why he was in jail, he stated, 'Yes, for possession of marihuana.' I asked if he'd been advised of his rights under Miranda. He stated he had and signed the papers. He understood them. I asked if he wanted to go upstairs and talk to me in regard to the situation. He stated, 'No, it was just some old, homegrown stuff.' And he didn't wish to talk to me."

At the suppression hearing the defendant denied that part of the conversation about "homegrown stuff". He did not testify at the trial.

The State proved that the defendant had rented the U–Haul van the afternoon of September 30, 1974, using his own name and address at 1925 North Colgate, Springfield, Missouri.

The State further proved that the residence at 2127 East Cairo was owned by Roy Dulany and was rented to one Jerry Hamilton who lived at the residence with a young lady by the name of Angel Collins. Pickup orders for both Hamilton and Collins were issued but they were never located. A notebook and diary apparently belonging to Angel Collins were found under the cushions of the divan where the defendant was sleeping, which had some drug use and drug sales recorded in them. Defendant's mother testified that her son lived at home and was not related to anyone residing at 2127 East Cairo.

Defendant's first assignment of error is that the trial court erred by admitting in evidence his conversation with Detective

Smith and for overruling his motion to suppress that conversation and for permitting defendant's desire not to talk to be admitted in evidence against him. The conversation complained of occurred the morning following defendant's arrest and after he had previously been advised of his rights and had signed a waiver of rights form. That conversation is set out in the above statement of facts.

This assignment of error is two-pronged. First, the defendant claims that this entire conversation was inadmissible because he was merely expressing his desire not to talk and to remain silent. Secondly, he claims that even if a portion of his response would be admissible as an admission against interest, the trial court erred in permitting Officer Smith to testify that defendant did not want to talk.

 The silence of an accused while under arrest is inadmissible because he is under no duty to speak. *State v. Stuart*, 456 S.W.2d 19, 22[3, 4] (Mo.banc 1970); *State v. Halk*, 524 S.W.2d 44, 48[7] (Mo.App. 1975); *State v. Benfield*, 522 S.W.2d 830, 834[9] (Mo.App.1975). Likewise, answers equivalent to silence are not admissible. *State v. Dowling*, 348 Mo. 589, 599, 154 S.W.2d 749, 755[6–8] (1941). Here the defendant did not remain silent, but made oral answers to Detective Smith's questions, a part of which was incriminating, i. e., "it was just some old, homegrown stuff." This was volunteered in conjunction with his indication that he didn't desire to talk. Clearly the reference to "homegrown stuff" was incriminating and constituted an admission against interest. The defendant was fully advised of his rights prior to the questioning by Smith and admitted that he had been so advised and understood those rights. There is no showing or claim by the defendant that he was tricked or coerced into making the admission. A voluntary statement or admission by an accused while under arrest and after being fully advised of his rights is admissible, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Gregg v. State*, 446 S.W.2d 630, 632[1, 2] (Mo.1969), and being a voluntary

admission against interest, it was properly admitted in evidence. Further, the defendant's response that he knew he was charged with possession of marihuana did not constitute an admission or inference of guilt, but was merely an acknowledgement that he knew why he was in jail. Its admission as part of the conversation did not constitute error. The point is ruled against the defendant.

Secondly, defendant alleges that even if that portion of his statement referring to "homegrown stuff" was admissible, to admit that part referring to his desire not to talk was error since to do so would in effect allow the State to use his constitutional right not to talk against him as evidence of his guilt.

 The defendant had the right to remain silent or indicate his desire not to talk, in which event neither would have been admissible against him. Instead, he voluntarily injected into the response an incriminating remark. He now wants us to hold that the trial court erred by allowing the State to introduce the entire response; but how is the State to question Detective Smith so as to elicit from him only the words constituting the admission and omitting those referring to his refusal to talk, where both are a part of one continuous and complete response? Is the State required to introduce the admission out of context? This court thinks not.

 This testimony was introduced for the purpose of laying a foundation for the admission of defendant's incriminating remark. No claim has been made that it was introduced for the purpose of permitting the jury to draw an inference of guilt from his refusal to talk. We hold that this case falls within the rule that the State is entitled to prove the entire conversation where part of it is incriminating and part is not. *State v. Hardin*, 324 Mo. 28, 36, 21 S.W.2d 758, 761[4] (banc 1929); *State v. Dowling*, supra, 348 Mo. at 599–600, 154 S.W.2d at 755[9, 10].

The defendant had the right and opportunity to remain silent, but didn't, and he has

**538**

no just cause for complaint. The trial court properly admitted the entire conversation in evidence. This point is ruled against the defendant.

The defendant's second point is that the trial court erred in overruling his motion for a verdict of acquittal for the reason that the evidence was insufficient to establish that the defendant was aware of the character of the drug and intentionally and knowingly had it in his possession.

■ In reviewing the sufficiency of the evidence to sustain a conviction, this court accepts as true all evidence whether direct or circumstantial which is favorable to the verdict, together with all favorable inferences which can reasonably be drawn therefrom, and rejects all evidence and inferences to the contrary. *State v. Wiley*, 522 S.W.2d 281, 292[19] (Mo.banc 1975); *State v. Brunson*, 516 S.W.2d 799, 801[2] (Mo.App. 1974).

■ In order to sustain a conviction for possession of a controlled substance, the State must prove beyond a reasonable doubt that the accused had knowledge of the nature and presence of the substance and that he had some conscious control either actual or constructive. *State v. Wiley*, supra, 522 S.W.2d at 292[25]; *State v. Davis*, 515 S.W.2d 773, 777[4–6] (Mo.App. 1974). Knowledge, being an essential element of the offense of possession, is rarely susceptible of direct proof but may be proved by evidence of control and declaration on the part of the accused from which an inference may fairly be drawn that he knew of the existence of the substance at the place found; likewise, the evidence need not show actual possession on the part of the accused. The illegal possession may be constructive. *State v. Edwards*, 317 S.W.2d 441, 447[7] (Mo.banc 1958); *State v. Young*, 427 S.W.2d 510, 513[5] (Mo.1968); *State v. Caffey*, 365 S.W.2d 607, 611[9] (Mo. 1963). Further, the requisite possession need not be exclusive and may be shown circumstantially. *State v. Young*, supra, 427 S.W.2d at 513[4]; *State v. Davis*, supra, 515 S.W.2d at 777[8].

■ The issue here is whether or not there was sufficient evidence linking the defendant to the marihuana to support the reasonable inference that he was knowingly in possession thereof.

■ At the time of defendant's arrest he was the only person on the premises. He was not, according to the evidence, the owner or the lessee. His status was either that of a guest or trespasser; but in any event, he was not in exclusive control of the premises. The mere fact that an accused is present on the premises where controlled substances are found does not, without a showing of exclusive use or possession of the premises, make a submissible case. *State v. Wiley*, supra, 522 S.W.2d at 292[22–25]. However, the Supreme Court of Missouri said in *State v. Wiley*, supra, 522 S.W.2d at 292[22–25]:

"Where the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for a directed verdict."

What additional independent factors would in this case show defendant's knowledge or awareness of the character of the marihuana and his actual or constructive possession thereof? *First*, the defendant's statement, having been heretofore ruled to be admissible, that "it was just some old, homegrown stuff", is clearly incriminating in that it may logically be inferred that he not only had knowledge of the existence of the marihuana on the premises, but also had knowledge of its source. *Second*, the fact that there was such a large quantity on the premises would not logically lead one to believe that the defendant was unaware of its presence. Even though guilty knowledge may not be inferred on the basis of quantity alone, under the totality of the circumstances, such fact does tend to substantiate an inference of knowledge. *Third*, the fact that the U–Haul van was parked adjacent to the door leading to the premises, that the van had been leased to the defendant, that the van was one-third full of freshly cut marihuana of the same

type, appearance and condition as that found inside the premises, would further substantiate a finding of knowledge and possession on defendant's part. *Lastly*, the fact that a key to a padlock on the back door of the van was found on defendant's person at the time of his arrest is further evidence of his possession and control.

■ Facts and circumstances relied on by the State to establish the guilt of an accused by circumstantial evidence must be consistent with each other and the hypothesis of his guilt must be consistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to his guilt that every reasonable hypothesis of innocence is excluded. *State v. Taylor*, 445 S.W.2d 282, 284[2] (Mo.1969); *State v. Berry*, 488 S.W.2d 667, 669[3] (Mo.App.1972). But that circumstantial evidence need not demonstrate the absolute impossibility of innocence. *State v. Thomas*, 452 S.W.2d 160, 162[2] (Mo.1970); *State v. Taylor, supra*, 445 S.W.2d at 284[5].

All of these factors taken together are such that a jury might logically and lawfully infer that the defendant not only had knowledge but actual or constructive possession of the marihuana. The evidence here is consistent with guilt and inconsistent with his innocence.

The trial court did not err in overruling defendant's motion for verdict of acquittal.

■ The defendant's final assertion is that the trial court erred by failing to give MAI–CR No. 2.10 which is an instruction required to be given whether requested or not. MAI–CR No. 2.10 is as follows:

All persons are guilty who knowingly act together with the common purpose of committing an offense, or who, (whether present or not) knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

Defendant's contention seems to be that because the record reveals that he was merely present on the premises where the marihuana was found and since that is not sufficient to render him guilty, the court should have given Instruction 2.10 in order to make it clear to the jury that defendant's mere presence was not enough, but that he must knowingly have acted with another or others with common intent by aiding or otherwise acting in the commission of the offense. The defendant's assertion is without merit. If defendant's mere presence was the extent of the proof presented by the State, the trial court would undoubtedly have directed a verdict of acquittal and this appeal would not now be before us. Here, the defendant's conviction was based not only on his presence at the scene but on all of the other factors previously discussed above, which taken together show his knowledge and actual or constructive possession of the marihuana.

The State submitted its case to the jury on the basis that the defendant was personally guilty of possession, not on the theory of his guilt as an aider or encourager. No one else was on the premises, and there is no substantial evidence that anyone other than this defendant was aware of the presence of this marihuana. There is a complete absence of evidence indicating that the defendant was only an aider or encourager. Note No. 4 of notes on use of Instruction 2.10 states:

"The failure to use MAI–CR 2.10 and 2.12 will not be deemed error even if there is substantial evidence that defendant was a joint, active participant or actor so long as there is no evidence that he was *only* an aider or encourager." (Emphasis added)

There being no such evidence, the point is ruled against the defendant.

Judgment affirmed.

All concur.