**STATE of Missouri, Respondent.**

v.

**Dennis B. MOORE, Appellant.**

**No. WD 32966.**

Missouri Court of Appeals, Western District.

Aug. 2, 1983.

As Modified Oct. 4, 1983.

Phillip R. Gibson (argued), Kansas City, for appellant.

William N. Marshall (argued), Harrisonville, for respondent.

Before SOMERVILLE, C.J., and SHANGLER, PRITCHARD, DIXON, TURNAGE, MANFORD and NUGENT, JJ.

NUGENT, Judge.

Defendant was convicted by a jury of possession of marijuana, § 195.020,[1] sentenced to thirty days in jail, and fined $500. He argues both that his warrantless arrest was unlawful and that the subsequent warrantless search and seizure of evidence in his home was unlawful. We reverse.

At 1:30 a.m. on October 13, 1980, Deputy Sheriff John Lucas of the Cass County Sheriff's Department was sent to a residence in Belton, Missouri, to inform Mr. Richard Bailey, thought to reside therein, that his car was on fire in a school parking lot. As he approached the house, Officer Lucas passed a front window through which he could see one person asleep on a couch and another asleep in a chair. Between them was a coffee table on which rested an open fruitcake can containing a green, leafy substance believed by the officer to be marijuana. He knocked at the door which was answered by the defendant, the person seen sleeping on the couch. The defendant, Mr. Moore, informed the officer that Mr. Bailey was not there but took the message.

Officer Lucas then left, returned to the Belton Police Department, and consulted with Detective Jack Harris. Mr. Harris called the Cass County prosecuting attorney who advised him that probable cause existed to arrest the owner of the house for possession of marijuana.

Officer Lucas, Detective Harris and a third officer, Sgt. Wright, then returned to the house at about 2:30 a.m. Officer Lucas and Sgt. Wright each carried a service revolver and Detective Harris carried a .12 gauge shotgun. As they walked by the front window, they again saw the defendant asleep on the couch, but neither the second sleeper nor the fruitcake can was visible. In response to their knock, defendant answered the door. Although on direct examination at trial Officer Lucas testified that the defendant "came out on the porch," he also described defendant's position as "half in the house and half out of the house," with "the biggest part of him" outside. The officer told Mr. Moore that he had seen the marijuana on his previous visit, advised him that he was under arrest for possession of a controlled substance, and read him a *Miranda* warning.

Defendant "made a motion with his hand," said something to the effect of "Oh, shit," turned around, and went back into the house. Officer Lucas interpreted defendant's gesture to mean he should follow so the three men entered the house. They followed Mr. Moore into the living room area where he reached under the couch, retrieved the can and handed it to Officer

1. All sectional references are to Revised Statutes of Missouri, 1978.

Lucas. The contents were later analyzed and found to be less than thirty-five grams of marijuana.

The other sleeper was found behind the couch, apparently still asleep, and was placed under arrest.

The defendant presented no evidence at trial. The jury returned a verdict of guilty and defendant was sentenced to thirty days in jail and fined $500.

In defendant's first point, that his warrantless arrest was unlawful, he relies on *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), for the rule that absent consent or exigent circumstances, warrantless arrests within the confines of one's home are unconstitutional. Although we have serious doubts as to the applicability of *Payton* to this case where the defendant was at least partially *outside* of his home at the time of the arrest, in light of the fact that *Payton* carefully drew a "firm line at the entrance to the house," referring to it as "that threshold [which] may not reasonably be crossed without a warrant," *Id.* at 590, 100 S.Ct. at 1382, the point is one we need not decide. We find defendant's warrantless arrest to be unlawful for a more fundamental reason—lack of probable cause.

In Missouri, a warrantless arrest is authorized only if it is based on probable cause, *State v. Garrett,* 627 S.W.2d 635, 641 (Mo.1982) (en banc); *State v. Olds,* 603 S.W.2d 501, 505 (Mo.1980) (en banc), a proposition said in *Garrett* to be "so well recognized that it needs no authority."

Probable cause for an arrest without a warrant carries two requirements. First, the facts within the arresting officers' knowledge must be sufficient to warrant "a man of reasonable caution in a belief that an offense has been or is being committed." Second, the facts must warrant a belief "that the person arrested is guilty of that offense." *State v. Olds, supra,* at 505. *See also State v. Garrett, supra,* stating that probable cause requires facts sufficient to warrant a belief that "*the person being arrested* had committed the offense for which he has been placed in custody" (emphasis added), and *State v. Berry,* 609 S.W.2d 948, 952 (Mo.1980) (en banc), stating that probable cause requires facts sufficient to believe that *the defendant* has committed an offense.

In other words, reason to believe, or even certainty that an offense has been or is being committed does not constitute probable cause to arrest a particular individual unless reason also exists to believe that *that individual* committed the offense. Although "[a] broad gulf exists between what is necessary to prove one guilty and the requirement of probable cause of a warrantless arrest[,] ... [b]are suspicion ... is not enough to support a finding of probable cause for a warrantless arrest." *State v. Grady,* 548 S.W.2d 601, 608 (Mo.App.1977).

A police officer with some training and experience in the recognition of controlled substances who sees through a window material he believes to be marijuana has probable cause to believe that *someone* inside is or recently was unlawfully in possession of a controlled substance. The question here, however, is whether probable cause exists in that circumstance to believe that the first person to answer the door is, in fact, the possessor. We think not.

Probable cause must, of course, be analyzed according to the facts known at the time of arrest, not according to facts learned later. At the time the officers here arrested Mr. Moore, they knew that he had been sleeping in the house (although not in the bedroom), that he had answered the door earlier and that a Mr. Bailey was not present. They did not know whether defendant resided in the house (either as tenant or owner) or was a mere guest. All they knew for certain was that he was present in a dwelling where contraband was located. Our analysis of probable cause, then, must proceed on the basis that at the time of arrest the officers had no reasonable basis for a determination of defendant's status other than his mere presence. Whether he was the owner, a tenant, a

guest or a trespasser was a matter of surmise.

The United States Supreme Court addressed the relationship of presence and possession in *United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), in which, during a raid of an industrial complex, the defendant was found standing a few feet away from a still. He was charged with possession of an illegal still and convicted on the basis of 26 U.S.C. § 5601(b) which provided that the presence of the defendant at the site "shall be deemed sufficient evidence to authorize conviction, unless the defendant explains such presence to the satisfaction of the jury." The Court found such a statutory inference unconstitutional, stating at 144, 86 S.Ct. at 284 that

> It may be ... that Congress has the power to make presence at an illegal still a punishable crime, but we find no clear indication that it intended to so exercise this power. The crime remains possession, not presence, and with all due deference to the judgment of Congress, *the former may not constitutionally be inferred from the latter.* (Emphasis added.)

The holding in *Romano* provided the basis for the reversal of a conviction for possession of marijuana in *United States v. Wynn,* 544 F.2d 786 (5th Cir.1977). Officers there found forty to fifty marijuana plants growing one hundred yards from an occupied house. While gathering the plants, the officers observed defendant Wynn driving up to the house. Asked if he owned the residence, Wynn said he did not but that a friend of his was the owner. When asked if the friend was home, defendant suggested they all go to the house to find out. They did so. Inside were three persons sleeping in various rooms, with marijuana in plain view. All the occupants were arrested for possession of marijuana, including the defendant who admitted having a "coming and going" relationship with the owner of the house. On review, the court held at 791 that defendant's conviction could not stand:

> His offense was no more than selecting an unfortunate time to visit a friend.... A contrary holding would exalt mere presence to a sufficient basis for an arrest for a crime of possession. The Supreme Court had held that presence alone, unilluminated by other facts, is insufficient proof of possession [citing *United States v. Romano*]. *Appellant's "coming and going" relationship with the owner of the residence ... may not be extrapolated into establishing any greater probability of possession than would be furnished by mere proximity to the thing allegedly possessed....* The probability of possession by Wynn in the present case was an insufficient basis for a legal arrest. (Emphasis added.)

Even more specifically, the Supreme Court has considered the sufficiency of probable cause for a warrantless arrest for possession of controlled substances made before the arresting officers knew whether the defendant was the sole occupant of the living quarters and has found such probable cause lacking. In *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948), police were "tipped" that opium was being smoked in a certain hotel. The officer and trained narcotic agents recognized the smell of burning opium in the hallway and knocked on defendant's door. She opened the door and was *immediately* placed under arrest. The subsequent search of the room revealed both opium and the fact that she was alone.

In its brief, the Government conceded that only when the arresting officer and agents had entered the room and discovered that the defendant was alone did they have a reasonable basis for believing that she (as opposed to someone else in the room) had been smoking opium. The Court at 16, 68 S.Ct. at 370 agreed that, "[t]hus the Government quite properly stakes the right to arrest, not on the informer's tip ... but on the knowledge that she was alone in the room ...." That knowledge, gained only *after* the entry and arrest, could not be used retroactively to justify the arrest. As the Court simply stated at 17, 68 S.Ct. at

370 in reversing the conviction, "This will not do."

Just as in *Johnson,* the officers here did not know until *after* the arrest that defendant lived in the house. This knowledge cannot, then, be considered to fortify probable cause.

■ Just as in *Romano,* defendant here was seen a few feet away from contraband, neither touching it nor visibly aware of its presence. As stated in *Romano,* possession may not constitutionally be inferred from mere presence. This is consistent with Missouri law in which "the mere fact that an accused is present on the premises where controlled substances are found does not, without a showing of exclusive use or possession of the premises make a submissible case." *State v. Barber,* 635 S.W.2d 342, 344–45 (Mo.1982).

Just as in *Wynn,* for all the officers knew at the time of the arrest, defendant was a mere house guest "selecting an unfortunate time to visit his friend." Nothing about his conversation with Officer Lucas during the earlier visit suggested he lived in the residence or exerted control over its contents. His relationship to the owner of the house may have been no more than the "coming and going" relationship of Mr. Wynn to his friend, a relationship which no more makes possession probable than does mere proximity to contraband.

The question of probable cause to arrest persons not known to be any more than house guests for possession of contraband found within the house has not been squarely addressed in Missouri. But several principles from cases dealing with sufficiency of evidence to convict provide guidance.

■ Where an accused has exclusive control of premises, he is deemed to have possession and control of contraband found therein. Where control is not exclusive (as in joint occupancy), a similar inference does not arise absent further evidence connecting the accused with the drugs. *State v. Wiley,* 522 S.W.2d 281, 292 (Mo.1975) (en banc). *See also State v. Lowe,* 574 S.W.2d 515, 517 (Mo.App.1978). As the court said

in *Wiley* at 292, "Merely being a guest in the household of another would not be sufficient to sustain a conviction of possession of controlled substances."

This latter rule was most recently applied in *State v. Barber, supra,* in which officers entered an apartment to arrest a certain person and found eight people, including the defendant, asleep in various bedrooms. In the room in which defendant slept, a large quantity of illegal drugs was found in plain view. The Supreme Court held that because the evidence did not show that drugs had been found on defendant's person or that the defendant resided in the apartment or even how long he had been on the premises, the evidence was insufficient to convict.

These cases concern the sufficiency of the evidence to convict, nevertheless, at the same time they instruct us as to what facts constitute probable cause. They examine the elements of the offense of possession essential to a finding of either probable cause or proof beyond a reasonable doubt. In considering whether probable cause existed, Judge Wasserstrom, writing for this court in *State v. Funk,* 490 S.W.2d 354 (Mo.App.1973), at 360–63, relied upon other earlier cases dealing with the sufficiency of the evidence. All of these cases discuss the essential minimal relationship of the defendant to the drug, that is, the facts necessary to reasonable grounds for belief that defendant possesses the drug which must precede and justify a warrantless arrest. The only difference between facts needed to establish probable cause and those needed to prove guilt beyond a reasonable doubt is in the degree or quantum of proof, not in the facts or elements of the offense. The latter is a much higher standard.

■ These rules enunciated by the Supreme Court of Missouri and the language in *Johnson v. United States, supra,* make clear, however, that, had the police here known that defendant exclusively controlled the premises (lived there alone), that fact coupled with the viewing of marijuana by the officers would have established prob-

able cause.[2] Had the officers known that defendant had joint control of the premises (resided there with others), probable cause to believe that he was the possessor would have existed only if some other indicia of possession existed, that is, an informant's tip, defendant's pre-arrest behavior, perhaps even close proximity and access to the area where drugs were found as in *State v. Jackson,* 576 S.W.2d 756 (Mo.App.1979). (*But see State v. McGee,* 473 S.W.2d 686 (Mo.1971).) But where the officers knew nothing about defendant's occupancy and control of the premises other than the fact that he was sleeping in the living room (suggesting, if anything, guest status comparable to the defendant in *State v. Barber, supra* ), probable cause required some additional indicia of possession greater than mere unconscious proximity. To hold otherwise would burden an untimely guest with the same presumption of control as an exclusive possessor, a burden neither in keeping with common experience, nor, as *Romano* would suggest, constitutionally sound.

◼ We hold, therefore, that because defendant was arrested solely on the knowledge that he was present in a house in which contraband had been seen, probable cause for his warrantless arrest did not exist. Having so decided, we need not reach defendant's argument that the warrantless search of the premises was unlawful.

Accordingly, we reverse the conviction and order the defendant discharged.

SHANGLER, DIXON, WASSERSTROM, TURNAGE, CLARK, KENNEDY and LOWENSTEIN, JJ., concur.

PRITCHARD, J., dissented in separate dissenting opinion filed.

SOMERVILLE, C.J., and MANFORD, J., dissents and concurs in separate opinion of PRITCHARD, J.

2. Ironically, this is very close to the advice said by Detective Harris to have been given him by the Prosecuting Attorney who counseled that probable cause existed to arrest the *owner* of the residence.

PRITCHARD, Judge, dissenting.

The principal issue presented is whether there was probable cause to arrest appellant, without a warrant therefor, for the misdemeanor of possession of marihuana (less than 35 grams), and whether certain bags containing marihuana, and the can containing them, were properly received into evidence, having been seized after the arrest. A jury returned a guilty verdict and appellant was sentenced to 30 days in jail and was fined $500.

The facts are these: In the early morning hours, about 1:30 a.m., of October 13, 1980, Deputy Sheriff Lucas of Cass County was dispatched to 208 East 165th Street in Belton by the Belton police department to inform one Bailey that his car which was left in a school parking lot had caught fire. As he approached the front door of the residence, he looked through a large picture window and saw two subjects, one lying on a couch facing the window, and the other in a chair that was at an angle to the couch. Both subjects were apparently asleep. Lucas saw also a coffee table between the couch and the chair, parallel with the couch, and on the table was a can with its lid open with what appeared to be a green leafy substance in it. He saw "Several baggies that appeared to contain green leafy substance, what I believed to be marihuana." Appellant was lying on the couch about 3½ or 4 feet from the coffee table, and the other person in the chair was about the same distance from the can. Lucas knocked on the door and appellant came to it. Lucas asked him if Bailey was there. He was not, so Lucas gave the message about the car fire to appellant. No attempt to arrest was made at that time.

Shortly after two o'clock Lucas called Detective Harris, who, in turn, called the prosecutor who advised that in his opinion there was probable cause to arrest the owner of the house for possession of marihuana. Harris, Lucas and a Sgt. Wright then returned to the residence. At that time Lucas again looked through the window and

saw appellant lying on the couch. The other person was not in sight, nor was the can. The officers then went to the front door where Lucas again knocked on the door and appellant opened it and came out on the porch. Lucas advised him that he was under arrest for possession of a controlled substance and read him his constitutional rights from a *Miranda* warning card. Lucas explained to him that he had seen the can with the green leafy substance in it earlier. Appellant made a comment, "Oh, shit", and made a motion with his hand which Lucas took to mean that he was to follow him back into the residence, which he and the other two officers did. They followed appellant into the living room area "and he just bent down, got under the end of the couch nearest the door and reached in and got the can and turned around and handed it to me." The can was then closed, but Lucas looked inside of it and saw several bags of green leafy substance, seeds and baggies. The contents were later analyzed and found to be marihuana, which was introduced into evidence.

Although Lucas testified on direct examination that appellant, on opening the door, came out on the porch, it was developed on his cross-examination that appellant may have had a foot inside the house, but the biggest part of him was out, that he was half in the house and half out of the house.

Whether appellant was a guest or a resident of the house was unknown to any of the officers at the time Lucas placed him under arrest. It appears from the record that appellant's wife was asleep in the back bedroom and appellant, accompanied by Detective Harris, went back to tell his wife that he was going to jail. At the time the officers entered the living room, the other man was found behind the couch, apparently asleep, and he was then placed under arrest.

Several cases sustain the validity of the arrest and the admissibility of the controlled substance under the facts and circumstances of this case. The first is the very similar case of *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975). There the police received a telephone tip from an unknown informer that defendant and two others had drugs stored in the refrigerator of an apartment rented to Mr. and Mrs. Gary Moore. Some of the informant's information was verified by a police officer. Two police officers and three sheriff's deputies then went to the Moore apartment without either an arrest warrant or a search warrant in their possession. Three officers went to the front door and two to the back door. At the front door, an officer knocked and it was opened by a person inside. The officers announced that they were police officers, and one of them told the occupants they were under arrest for the possession of controlled substances and advised them of their rights. Except for Moore, the individuals inside were seated on living room seats and couches. Officer Stover walked through the living room to the kitchen, admitted the officers at the back door, then immediately went to the refrigerator and removed the controlled substances therein. The individuals in the apartment were not searched and no other search of the place was made. As to the legality of the arrest, the court first had this to say, page 287[1–3], " 'The lawfulness of the arrest without warrant, in turn, must be based upon probable cause, which exists "where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense had been or is being committed." ' [Citing cases]." And, going on at page 287[4–9], "Whether there was probable cause to arrest the appellant along with others in the apartment depends on the information in the officers' possession prior to the arrest. Of course, all the information in the possession of the officers and all reasonable inferences therefrom are pertinent to determine probable cause. Whether there is justification for probable cause to arrest without warrant must be determined by practical considerations of everyday life on which reasonable men act and is not to be determined by hindsight by legal technicians. [Citing case.] The determination of probable cause depends upon the particular facts and circumstances of the individual case and no ready 'litmus

paper test' can be applied. Probable cause may be based on hearsay. There is a broad gulf between what is required to prove guilt and the requirement of probable cause. We deal here with controlled substances. In such cases officers may well have to depend on informers, special employees *and on their own special experience.* [Citing case]." (Italics added.)

Note that in the *Wiley* case, *all* of the occupants of the apartment, including Wiley who was a guest, were arrested for possession of the narcotics, prior information as to the presence of the drugs having been given to the police by an unknown informant. The court held that under all of the circumstances there was probable cause to make the arrests. In this case, there was prior knowledge by deputy Lucas that there was marihuana on the coffee table, and it was in his plain view. It was close, about 3½ to 4 feet from the two sleeping men, within the easy reach of either of them. Both of these men were arrested for the possession of the marihuana. Although there may not be an inference drawn of possession of a controlled substance, or knowledge and control thereof, where the defendant is not in exclusive control of the premises, *Wiley,* supra, page 292[22–25], it was said at that same place, "Where the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for a directed verdict." That same rule must apply to withstand a motion to suppress evidence based upon a claimed lack of probable cause to arrest, as in this case. The additional and independent evidence, as noted, to that of joint control of the premises, is appellant's close proximity to the marihuana to which he had easy, actual access, and deputy Lucas testified unequivocally that when he saw the tin and its contents he believed it to be marihuana. See *State v. Jackson,* 576 S.W.2d 756 (Mo.App.1979), where the contention was that the trial court erred in failing to sustain a motion for judgment of acquittal because the evidence failed to show that appellant " 'was aware of the presence and character of the heroin and was intentionally and conscious-

ly in possession of it.' " The facts' were that appellant had an apartment where he lived with a girlfriend. She admitted the officers who entered the kitchen where appellant, wearing a bathrobe, was standing about two feet from a table upon which there were items related to the use of drugs and capsules containing heroin. Appellant denied knowledge of the items, but the court said, page 757, "In this case appellant was two feet from a kitchen table upon which in plain view there were several syringes, ten measuring spoons, several empty capsules, and eighteen capsules containing a brown powder later identified by chemical analysis to be heroin. *Appellant had actual access to the area where the heroin was found, and most of the items on the table were readily recognizable as drug related."* (Italics added.) The court held the facts "clearly constituted further evidence, other than only joint control of the premises, connecting appellant with the possession of the illegal heroin." Note also *State v. Zimpher,* 552 S.W.2d 345 (Mo.App.1977), cited in the Jackson case, where defendant and another were in joint control of premises where a controlled substance was found in a chest of drawers presumably used for the storage of their personal effects, and also in a bedside stand adjacent to the bed where defendant and another in joint control were sleeping (just prior to being placed under arrest). There were two other persons besides defendant in joint control of the premises. The court held that these facts constituted further evidence (other than joint control of the premises) within the rule of *State v. Funk,* 490 S.W.2d 354 (Mo.App.1973), and said, further, "one such incriminating fact is a defendant's access to an area in which drugs are found."

Compare *State v. Perry,* 499 S.W.2d 473 (Mo.1973), where a caller, identifying himself as a bus driver, reported to the police that he observed the occupants of a blue Volkswagen, license number CFI–587, flourishing a weapon. The bus driver said where he had last seen the automobile, but he did not describe the person flourishing the gun, state his or her sex, or describe the clothing worn by the person. The police found the described vehicle, which was oc-

cupied by two men and a woman, two blocks from where the bus driver reported it to have been. All three were asked to get out of the vehicle and were told they were under arrest for flourishing a deadly weapon. The officers *then* searched the three and found a pistol in appellant's purse. She argued on appeal that there was no probable cause for her arrest because no information was given by the tipster as to which person had a weapon. The court rejected that argument, saying at page 476, " * * * the officers concerned had not only the right but also the duty to arrest the occupants of the Volkswagen in view of the facts in their possession, and that the search, which produced the revolver, was valid as an incident to a lawful arrest." Compare also *State v. Drake,* 512 S.W.2d 166 (Mo.App.1974), where a police officer responded to a report of theft and while talking to the woman in her apartment, he observed two men walking down the hall. He recognized one of them as having a police record, arrested him, and while patting him down, found a watch belonging to complainant. The officer then placed the companion under arrest, and thereafter found some of the woman's property on him. Drake contended that there was no probable cause for arrest, but the court held that his being in the presence of a person known to have a police record, who had some stolen property in his possession, gave the officer sufficient reason that appellant had committed a theft.

The observation of deputy Lucas of marihuana on the coffee table prior to the arrest is sufficient in itself of probable cause for the arrest of appellant and his companion at the time. There is, however, one important fact which surely the trier of the issue of probable cause for the arrest of appellant is not required to ignore. That is that after appellant was arrested, *and practically contemporaneous therewith,* he went back into the living room and retrieved the tin of marihuana and handed it to Lucas. This fact shows his guilty knowledge of and control over the prohibited substance. The possession of a controlled substance need not be exclusive and may be established circumstantially. *State v. McCurry,* 587

S.W.2d 337 (Mo.App.1979). See also *State v. Barber,* 635 S.W.2d 342, 343 (Mo.1982), quoting *State v. West,* 559 S.W.2d 282, 284 (Mo.App.1977), "Both possession and knowledge may be proved by circumstantial evidence. If actual possession has not be shown, 'constructive possession will suffice when other facts buttress an inference of defendant's knowledge of the presence of a controlled substance.' " *State v. Wiley,* supra, is authority for the finding of appellant's joint possession of the controlled substance.

Appellant's other contention is that there was an invalid warrantless arrest of him in his home under *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). That case cannot control because the trier of the fact could conclude that there was an entry into the residence by appellant's consent, and that the arrest was made when he was at least partially outside the door which he had opened.

The judgment herein should be affirmed.

For the foregoing reasons, and under the above cited authority, I dissent from the holding of the principal opinion.