**STATE of Missouri, Appellant,**

v.

**John Richard MARTIN, Respondent.**

**No. 20853.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 8, 1996.

Patrick L. King, Pros. Atty., Phelps County, Rolla, for appellant.

Dan Viets, Columbia, for respondent.

CROW, Presiding Judge.

A corporal of the Missouri State Highway Patrol, accompanied by the sheriff of Phelps County, arrested John Richard Martin ("Defendant") after observing ten marijuana plants growing approximately forty yards from a house occupied by Defendant and his wife. The prosecutor subsequently charged Defendant with three felonies regarding the marijuana.

Claiming the arrest was unlawful, Defendant moved to suppress "all evidence" obtained as a result of the arrest, including all "self incriminating statements" allegedly made by him. After an evidentiary hearing, the trial court granted the motion, finding that the facts known by the arresting officer "did not constitute probable cause to arrest Defendant."

■ The State appeals. § 547.200.1(2), RSMo 1994. Its sole point relied on avers the trial court erred in that "the arresting officers had knowledge of facts and circumstances sufficient for a prudent person to

believe [Defendant] committed or had committed an offense."

■ Appellate review of a trial court's ruling on a motion to suppress in a criminal case is limited to a determination of whether the evidence is sufficient to sustain the ruling. *State v. Villa–Perez*, 835 S.W.2d 897, 902[9] (Mo. banc 1992). The appellate court reviews the ruling under an abuse of discretion standard. *State v. Milliorn*, 794 S.W.2d 181, 183[5] (Mo. banc 1990). Only if the trial court's ruling is clearly erroneous will the appellate court reverse. *Id.*

The corporal, Rick Lisenbe, testified he received information from an informant July 14, 1994, that marijuana was growing in the vicinity of "the south outer road of I–44 near Doolittle" in Phelps County.[1] Lisenbe and another officer went to the site, described as an unfenced, "growed [sic] up, brushy area."

The ten marijuana plants, ranging in height from four to six feet, "were in a circle ... real close together." A "mesh-type wiring" and "some type of fertilizer" had been placed around the plants.

The nearest building, a house, "was located directly above the patch," some "30, 40 yards away." A "well-worn" path "led into a series of trails to each plant." The path "made a circle around back towards ... the direction of [the house]," ending "where what appeared to be somebody had mowed around [the] house." As we understand the testimony, the distance from the end of the path to the back of the house was "15 yards maybe."

An open steel trap was in one of the trails within "a few feet" of the marijuana plants. Some "metal u-shaped spikes" were "on the ground" in the trail.

There were other houses in the area; however the next closest house to the end of the path was "quite a distance away."

On July 15, 1994 (the day after finding the plants), Lisenbe, accompanied by the sheriff, Don Blankenship, returned to the site and maintained surveillance over the patch "at least three hours." They saw no one, so they decided to terminate the surveillance and go to the house nearest the patch. Lisenbe

---

1. The case was sent to Pulaski County on change of venue.

explained, "We were going to confront whoever was the occupant of that house."

Lisenbe knocked on the front door; Defendant came outside on the porch. Lisenbe identified himself and Blankenship, and told Defendant he was "under arrest for cultivation of marijuana." Lisenbe avowed he then advised Defendant of his rights under "the Miranda decision."[2]

Lisenbe asked Defendant about the steel trap. Defendant replied that "it was for a groundhog." Lisenbe then asked about the marijuana plants. Defendant explained they were "for his own personal use and not for resale." After conversing with Defendant, Lisenbe and Blankenship "pulled the plants and seized [them]."

Defendant's wife testified she and Defendant reside in the house as renters. Lisenbe conceded that the land on which the marijuana was growing is neither owned by, nor leased to, Defendant.

 Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested. *State v. Sidebottom*, 753 S.W.2d 915, 923[20] (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). While the quantum of information necessary to fashion probable cause means more than mere suspicion, its existence must be determined by practical considerations of everyday life on which reasonable persons act and not the hindsight of legal technicians. *State v. Heitman*, 589 S.W.2d 249, 253[5] (Mo. banc 1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980).

In support of its ruling in the instant case, the trial court cited *State v. Moore*, 659 S.W.2d 252 (Mo.App. W.D.1983). There, a deputy sheriff, Lucas, went to a house seeking one Bailey. Through a window, Lucas saw an individual on a couch and another individual in a chair. Both were asleep. On a table between them, Lucas saw a can containing a substance he believed was marijuana. When Lucas knocked, the individual on the couch came to the door and told Lucas that Bailey was not there. Lucas departed.

An hour later, Lucas returned with other officers. Through the window, Lucas again saw the individual asleep on the couch. When the officers knocked, the couch occupant answered. Lucas arrested him for possession of marijuana. The officers entered the house; the arrestee handed Lucas the marijuana. Following a jury conviction, the arrestee claimed on appeal that his arrest was unlawful.

The Western District of this Court agreed, pointing out that probable cause for an arrest requires not only reasonable grounds to believe an offense has been or is being committed, but also reasonable grounds to believe the arrestee is the person who committed, or is committing, it. *Id.* at 255[2]. In holding the officers lacked probable cause, *Moore* emphasized the officers did not know, at time of arrest, whether the arrestee resided in the house or was merely a guest or trespasser. *Id.* at 255–56. Inasmuch as the officers did not learn until after the arrest that the arrestee and his wife resided in the house, *id.* at 259, such knowledge could not "be considered to fortify probable cause." *Id.* at 257.

*Moore* further explained that where an accused has exclusive control of premises, he is deemed to have possession and control of contraband found therein. *Id.* at 257[7]. However, where control is not exclusive (as in joint occupancy), a similar inference does not arise absent further evidence connecting the accused with the drugs. *Id.*

In the instant case, it is evident that neither Lisenbe nor Blankenship knew, before knocking on Defendant's door, who resided there. Furthermore, there is no evidence that when Defendant answered the door, either Lisenbe or Blankenship asked Defendant whether he lived there before Lisenbe arrested him. Accordingly, Lisenbe and Blankenship knew no more about occupancy of the house at time of arrest than did the officers in *Moore*.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The location of the marijuana in the instant case provides less support for probable cause than the location in *Moore*. There, the marijuana was in the house, near the sleeping arrestee. Here, the marijuana was not in the house or even in the yard surrounding it. Instead, the marijuana was in an unfenced, brushy area some forty yards from the house. Neither Lisenbe nor Blankenship had any information that Defendant was an owner or lessee of that land.

■ Nothing Lisenbe or Blankenship learned after arresting Defendant could be used to buttress probable cause. *Moore*, 659 S.W.2d at 257. Consequently, Defendant's post-arrest statements, even if obtained in compliance with *Miranda*,[3] cannot supply probable cause for the arrest.[4]

In sum, all Lisenbe and Blankenship knew when Lisenbe arrested Defendant was that he was inside the house nearest the path leading to the marijuana patch. Inasmuch as neither officer knew Defendant resided there, neither could have known whether Defendant was the sole occupant. Given those circumstances, *Moore* supports the trial court's ruling on Defendant's motion to suppress.

The State maintains the evidence on probable cause in the instant case is stronger than *Moore* because here, the path from Defendant's house to the marijuana patch "raised a justifiable, reasonable suspicion that the occupant of the house was the person in the best position to provide [the cultivation of the plants] and have unlimited access to the marijuana." The flaw in that argument is, as emphasized earlier, neither Lisenbe nor Blankenship knew Defendant

resided in the house, either alone or with others, when Lisenbe made the arrest.

*State v. Adams,* 791 S.W.2d 873 (Mo.App. W.D.1990), *cert. denied,* 498 U.S. 999, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990), cited by the State, does not support the claim of error. In *Adams,* officers found marijuana growing on a farm owned by the accused. *Id.* at 877. He resided on the farm, apparently alone. *Id.* at 878. The Western District of this Court, without mentioning *Moore,* held the facts in *Adams* sufficient to establish probable cause for a valid arrest without a warrant. *Id.* at 877.

The obvious difference between *Adams* and *Moore* is that in *Adams,* the officers knew, at time of arrest, that the accused owned and was in exclusive possession of the land on which the marijuana was growing.

The State also cites *State v. Stewart,* 542 S.W.2d 533 (Mo.App.1976). It is not in point. It discusses the sufficiency of the evidence to support a finding that the accused knowingly possessed marijuana. *Id.* at 538-39. Some of the evidence pertinent to that issue was acquired after the arrest in *Stewart* (including an incriminatory statement by the accused). Whether probable cause existed to arrest the accused was not an issue in *Stewart.*

The final Missouri case cited by the State is too different factually from the instant case to require discussion.

Applying the rationale of *Moore,* we hold the trial court did not clearly err in finding that Lisenbe and Blankenship lacked probable cause to arrest Defendant. The State

---

3. Footnote 2, *supra.*

4. Defendant testified at the suppression hearing that he was never advised of his *Miranda* rights. The trial court made no finding on that issue. As we have seen, the trial court granted the motion to suppress because the court found there was no probable cause for the arrest. In *State v. Kilgore,* 771 S.W.2d 57 (Mo. banc 1989), *cert. denied,* 493 U.S. 874, 110 S.Ct. 211, 107 L.Ed.2d 164 (1989), the Supreme Court of Missouri held that in some circumstances, an incriminatory statement made after an unlawful arrest may be admissible. Admissibility hinges on whether the causal chain between the arrest and the subsequent statements was broken by intervening events and

whether the arrestee's statements were sufficiently an act of free will to purge the primary taint. 771 S.W.2d at 61, *citing Brown v. Illinois,* 422 U.S. 590, 602, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416, 426 (1975). Whether an arrestee's post-arrest statements are admissible under *Kilgore* is a question of fact to be determined from the evidence in each case. 771 S.W.2d at 61. In the instant case, the State does not argue that Defendant's statements are admissible under *Kilgore,* hence we need not consider that possibility. However, before leaving the subject, we note Defendant cites *State v. Miller,* 894 S.W.2d 649, 654-57 (Mo. banc 1995), which discusses the attenuation doctrine without mentioning *Kilgore.*

tacitly concedes that if the arrest was unlawful, Defendant's incriminatory statements are inadmissible.[5] Accordingly, we uphold the trial court's ruling on Defendant's motion to suppress.

In doing so, we observe that except for Defendant's "self incriminating statements," Defendant's motion does not specify the evidence he challenges. Inasmuch as the record indicates Defendant has no possessory interest in the land where the marijuana was growing, we infer he does not claim standing to challenge admissibility of the marijuana.

The trial court apparently made the same assumption. The trial court's ruling, as we comprehend it, suppresses only "Defendant's post-arrest statements."

The order appealed from is affirmed.

PARRISH and SHRUM, JJ., concur.