**STATE of Missouri, Plaintiff–Respondent,**

v.

**David R. HARRISON, Defendant–Appellant.**

No. 21508.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 3, 1997.

Motion for Rehearing or Transfer Denied Nov. 14, 1997.

Daniel T. Moore, Poplar Bluff, for Defendant–Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Jefferson City, for Plaintiff–Respondent.

SHRUM, Judge.

A jury found David R. Harrison (Defendant) guilty of felony possession of a controlled substance in violation of § 195.202, RSMo 1994. Defendant appeals, claiming that a policeman conducted a constitutionally invalid search when he frisked Defendant and then opened a metal container carried by Defendant. This court disagrees. We affirm.

## FACTS

Defendant does not challenge the sufficiency of the evidence. Thus, we view the facts in the light most favorable to the verdict.

Defendant was stopped in Williamsville, Missouri, by Officer Larry McFadden for driving without a taillight. This occurred at approximately 8:30 p.m. on April 28, 1995. After McFadden pulled Defendant over, he (McFadden) tried to "run the plate." However, Defendant got out of his vehicle and walked toward McFadden's car.

As Defendant approached, McFadden noticed a cylindrical-shaped bulge in Defendant's right front pants pocket. Also, he noted that Defendant acted "really nervous." Thereon, Officer McFadden left his vehicle and met Defendant near the front of his police car. Continuing, McFadden testified: "I had Mr. Harrison to stop and put his hands up on the car and I had the other officer with me get a permission to search form and had Mr. Harrison fill that out and I patted him down after that for my personal safety." McFadden said he did the pat-down "because of the bulge in the pocket" and asked for permission to search Defendant's car because of "the way he stepped out of the vehicle and approached mine, and the way he acted."

At some point, McFadden asked Defendant what was in his pocket. Defendant then produced a metal cylinder and handed it to McFadden. McFadden testified that as Defendant handed the metal cylinder to him, he (McFadden) did not "know if it was a weapon or not." He had never "seen an object like [it] before[ ]" and did not "recognize" what it was. Defendant told McFadden the cylinder held "some type of tool."

However, McFadden also explained: "At the time I didn't know what it was. It could have been numerous things. It could have been ... a knife or anything." Continuing, McFadden described the object as "shaped like a container of mace." Thereon, McFadden opened the cylinder "to see if it was a weapon" and found what he believed were marijuana seeds. He then placed Defendant under arrest.[1]

Defendant was taken to the Wayne County Sheriff's Department. While Defendant was being processed, a bag containing a green leafy substance was discovered in his underwear. Laboratory analysis established that the bag contained 96.36 grams of marijuana.

Defendant was subsequently charged with possession of a controlled substance. He moved to suppress the marijuana seeds and the 96.36 grams of marijuana. After a hearing, the trial court denied Defendant's motion to suppress. Defendant received a jury trial in which the cylinder, marijuana seeds, and the 96.36 grams of marijuana were introduced into evidence over defense objections. The jury convicted Defendant. This appeal followed.

## DISCUSSION AND DECISION

Defendant's sole point on appeal contends the trial court erred in admitting the metal cylinder, marijuana seeds, and 96.36 grams of marijuana because the warrantless search and seizure of the cylinder and seeds were illegal. Defendant further asserts that because the search which led to his arrest was illegal, the 96.36 grams of marijuana discovered during an inventory search would be the fruit of the cylinder search.

█ We review a trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Martin*, 929 S.W.2d 267, 268[3] (Mo.App.1996). We are limited to determining whether the evidence presented is sufficient to sustain the trial court's ruling. *Id.* at 268[2]. We consider the facts and reasonable inferences arising from the facts in the light most favorable to the ruling of the trial court. *State v. Rodriguez*, 877 S.W.2d 106, 110[11] (Mo.banc 1994). We will not reverse the trial court's ruling unless it is

clearly erroneous. *Martin*, 929 S.W.2d at 268[4].

Defendant alleges that Officer McFadden's frisk and subsequent opening of the cylinder did not comply with the standards set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and its progeny. Defendant does not challenge the stop of his vehicle by Officer McFadden. However, Defendant contends McFadden had no reason to conduct a pat down for weapons. Defendant argues that the officer did not articulate specific facts that would have led him to believe that Defendant was dangerous or able to gain immediate access to a weapon. *See Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).

█ Law enforcement officers may frisk or pat down an individual if "a reasonably prudent" person under the same circumstances would be warranted in the belief that his or her safety, or the safety of others was in danger. *State v. Kovach*, 839 S.W.2d 303, 310[17] (Mo.App.1992). The purpose of such a search is not to discover evidence, but to enable law enforcement personnel to conduct their investigation "without fear of violence." *State v. Rushing*, 935 S.W.2d 30, 32[2] (Mo. banc 1996), *cert. denied*, — U.S. —, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997) quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

█ Here, McFadden testified that after being pulled over, Defendant left his vehicle and approached his (McFadden's) car. McFadden was still seated in his car, trying to "run the plate." Presumably, it was dark at the time because McFadden had his headlights on and the stop occurred at 8:30 p.m. on April 28. Defendant appeared nervous as he approached and McFadden saw a cylinder-shaped bulge in Defendant's pocket. We find that these facts articulated by McFadden would lead a reasonably prudent person to fear for his or her safety. Thus, McFadden's frisk of Defendant was not improper.

In concluding that McFadden's frisk of Defendant was reasonable, we find support in *Kovach*, 839 S.W.2d at 303. In *Kovach*, a

---

1. At trial, when Officer McFadden was asked to identify the cylinder, he stated: "I guess it's some type of container for matches or tools or something. I don't know exactly what it's for."

state trooper searched a vehicle for weapons based on these facts: "(b) [T]he van [seen speeding] came to a 'very hesitant' stop after [the trooper] signalled it to stop; (c) [the driver of the van] was unusually nervous and would not maintain eye-to-eye contact with [the trooper]; (d) defendant was lying on a bunk in the back of the van[.]" *Id.* at 312–13. We held that those facts "justified the initial search for weapons." *Id.* at 313. We deem the *Kovach* facts sufficiently analogous to support our conclusion that McFadden's frisk was permissible.

Defendant also asserts that McFadden's opening of the metal cylinder went beyond a frisk allowed under the *Terry* rationale. Defendant reasons that McFadden should not have opened the cylinder because the object was not a known container for transporting marijuana seeds or other contraband. Thus, Defendant argues opening the cylinder constituted a warrantless search in violation of his Fourth Amendment rights.

■ The scope of a pat down search for the protection of law enforcement officers must be "confined in scope so that the intrusion is 'reasonably designed to discover guns, knives, clubs, or *other hidden instruments for the assault of the police officer.*'" *State v. Caudle,* 884 S.W.2d 81, 84 (Mo.App.1994) quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884, 20 L.Ed.2d at 911 (emphasis added). In analyzing a pat down search pursuant to *Terry* "it is material to inquire" whether an officer could reasonably believe an object discovered during the pat down was a weapon. *State v. Vanacker,* 759 S.W.2d 391, 393 (Mo.App.1988). At the suppression hearing, McFadden testified that when Defendant produced the cylinder, he (McFadden) did not know what it was or what it contained. He was concerned, however, that it might be a weapon. Specifically, McFadden expressed his concern that it might contain "mace," a "reversible knife," or "a spring loaded knife."

Also, he recounted that Defendant told him the cylinder contained some type of tool.

■ The metal cylinder itself measures approximately 2 9/16 inches in length and it is approximately 3/4 of an inch in diameter. A small metal ring for attachment to a lanyard or key ring is located on the screw top lid. The ring is connected to a small metal frame which is itself attached to the screw top lid. (This frame is designed to keep the screw top lid attached to the case when the lid is opened.) The size and shape of the cylinder are comparable to the size and shape of certain mace, pepper, or tear gas sprays. The case could conceal a blade or spring knife. We believe that an officer conducting a frisk and finding this object could reasonably believe that the cylinder was a weapon or concealed a weapon.

Further, it was reasonable for McFadden to determine if the object was itself a "tool" which could be used as a weapon, or concealed a "tool" which could be used as a weapon. He did not have to take Defendant's explanation of the object at face value. At that point McFadden had no reason to detain Defendant or keep the cylinder. McFadden was justified in determining if the cylinder or its contents could be used to harm him if the cylinder was returned to Defendant without inspection. *See* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE (3d ed.1996) § 9.5(d), p. 283 (stating that circumstances can exist where an officer may suspect possible harm if an object is returned unexamined at the end of an encounter, in which case the container should not be returned unexamined).[2]

Defendant relies on *State v. Hutchinson,* 796 S.W.2d 100 (Mo.App.1990) arguing that Officer McFadden's opening of the cylinder went beyond the scope of a search under *Terry. Hutchinson* is based, in part, upon the reasoning of *State v. Hensley,* 770 S.W.2d 730, 737 (Mo.App.1989). Both of these cases

2. Although not explicitly adopted in Missouri, the MODEL RULES FOR LAW ENFORCEMENT, STOP AND FRISK Rule 605 (Project on Law Enforcement Policy and Rulemaking, 1974) entitled "Returning Separable Possessions" merits consideration:

"If the person frisked or detained is not arrested by the officer, any objects taken from him pursuant to Rule 601(A) or Rule 602(C)

should be returned to him upon completion of the frisk or detention. However, if something occurring during the detention has caused the officer to reasonably suspect the possibility of harm if he returns such objects unexamined, he may briefly inspect the interior of the item before returning it."

involve the opening of containers removed from defendants after a pat down for weapons. However, *Hutchinson* and *Hensley* are distinguishable from this case.

The officer in *Hutchinson* removed a lip balm container from a suspect's pocket and opened it to find controlled substance. The officer in *Hutchinson* had no reason to believe the lip balm container was a weapon or concealed a weapon. In *Hensley*, officers opened a film canister and a vial removed from the pockets of two suspects. The officers in *Hensley* were conducting a pat down and knew when they touched the film canister and vial that the objects were not weapons. In both *Hensley* and *Hutchinson*, this court determined that an officer cannot open a container that he or she knows is not a weapon or does not contain a weapon within the scope of a *Terry* search for weapons. *Hensley*, 770 S.W.2d at 736[6]; *Hutchinson*, 796 S.W.2d at 109. However, the facts presented in *Hensley* and *Hutchinson* were not the facts presented in this case.

As stated before, McFadden's belief that the cylinder might contain a weapon or be a weapon was not unreasonable. Since return of the cylinder to Defendant was imminent, opening it was a reasonable part of McFadden's investigation to determine if the cylinder or its contents could be used as a weapon if returned to Defendant. Such an intrusion was within the scope contemplated by *Terry*.

Since McFadden discovered the marijuana seeds pursuant to a legitimate *Terry* search, the Fourth Amendment does not require that evidence to be suppressed. *See State v. Preston*, 861 S.W.2d 627, 631 (Mo.App.1993). Consequently the 96.36 grams of marijuana discovered during a valid inventory search do not need to be suppressed.

The judgment of the trial court is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.