STATE of Missouri, Respondent,

v.

Willie McCURRY, Jr.

No. 39999.

Missouri Court of Appeals, Eastern District, Division One.

Aug. 14, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 17, 1979.

Samuel Raban, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., David O. Fischer, St. Louis, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of two counts of assault with intent to kill with malice aforethought and one count of possession of a controlled substance—heroin. The court, acting pursuant to the second offender act, sentenced defendant to two thirty year consecutive terms on the assaults and a concurrent ten year term on the heroin charge. We affirm.

At 10:30 p. m. on April 9, 1977, several policemen from the Tactical Anti-Crime Team (TACT) of the St. Louis Police Department went to a home on North Market in St. Louis. Their intention was to make a purchase of narcotics at that location and then to arrest the seller. Two officers, Jacobsmeyer and Allen, went up to the door of the premises and knocked. The remaining officers secreted themselves at the rear of the house and near the front door. Defendant opened the door and Allen said they had been sent by Victor Murphy and wanted to buy "two caps" or "two buttons" —referring to heroin. Defendant responded that they should wait while he got what they wanted. Defendant then left the doorway closing the door until it was slightly ajar. Jacobsmeyer and Allen signalled to the nearby police officers who moved closer to the doorway but still attempted to remain concealed. All of the police officers were dressed in casual clothing although all of them except Jacobsmeyer and Allen wore armbands and caps identifying them as members of TACT. Approximately thirty seconds after leaving the doorway, defendant returned and began firing at Jacobsmeyer and Allen. Both were hit. The other police then began firing into the house and were shortly joined by a large number of uniformed police responding to a radio call for assistance. Many of these officers also began firing into the house. After five or ten minutes the police ceased firing upon orders from one of their number and by loudspeaker announcement the occupants of the house were advised that the house was surrounded by police and the occupants should surrender. Defendant and his father then left the house, unarmed, and were arrested. Upon a search of the house heroin was discovered on a dresser top in a bedroom. A pistol from which the bullet which hit Jacobsmeyer was discharged was found and a shotgun was also found.

Defendant contended that he believed the men at the door were burglars trying to force their way into his house, that he removed a pistol from his back pocket and fired at them and that he would not have done so had he realized they were police officers.

On appeal defendant raises three points. His first is that certain evidence seized from his home was inadmissible because obtained in contravention of his rights under the Fourth and Fourteenth Amendments. Following the exit of defendant and his father from the house several police officers entered the premises to search for additional persons therein. One of the officers who entered was Detective Brand who had been designated by the officer in charge of the TACT operation, Sgt. Hammer, as the "seizure officer." Defendant contends that Brand did not enter the house until an hour after the arrest of defendant and after the house had been searched for additional persons with no success. We do not find that the record supports such a contention. Brand was instructed to enter the house by Hammer and Hammer left the scene to go to the hospital to see Jacobsmeyer and Allen immediately after defendant exited the house. Although the record does not indicate precisely when Brand entered the house, it is reasonable to conclude that it was shortly after he was instructed to do so and while other officers were also inside looking for other occupants. The search for occupants continued for approximately an hour after original entry, in part because of difficulty in obtaining access to a portion of the house which was locked. In going through the house Brand found heroin, a strainer and spoon with heroin residue on them on top of a dresser in a bedroom. Other officers searching for occupants found the pistol and shotgun. All of these items were in

plain view. Additionally, Brand found additional contraband in dresser drawers and hidden in some tires on a porch. Those items were not in plain view. After hearing on defendant's motion to suppress, the trial court sustained the motion as to those items found in drawers and the tires and denied the motion as to those items in plain view.

The thrust of defendant's point is that Brand's entry into the house was not under emergency circumstances and that the search conducted was not reasonable in time, spatial scope or intensity.

The general rule is that warrantless searches are unreasonable *per se* unless the action falls within certain delineated exceptions. *State v. Epperson,* 571 S.W.2d 260 (Mo. banc 1978). The burden of proof is upon the state to establish that an exception exists. Objective facts within the knowledge of police and reasonable conclusions objectively drawn therefrom are determinative of the reasonableness of the particular search. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted." *Bell v. Wolfish,* —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Defendant concedes, and we also find, that the entry of the police into the house following defendant's exit therefrom was justified under the emergency circumstances then existing. At that time the police did not know how many persons had been shooting from the house, whether additional persons were still in the house and posed a danger, and whether someone might be injured inside the house. Where the basic intrusion is justified because of an emergency the seizure of items in plain view is permissible during the continuation of the emergency and so long as the search and seizure is reasonable in time, spatial scope and intensity. *State v. Epperson,* 571 S.W.2d 260 (Mo. banc 1978); *Michigan v. Tyler,* 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); *Mincey v. Arizona,* 437

U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused." *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971), l. c. 466.

Two weapons which were in plain view and seized by police officers who were searching for other occupants of the house clearly met all the requirements of admissibility. Defendant contends that the heroin and related paraphernalia found on the dresser top by Officer Brand does not meet the admissibility criteria because Brand's function was not to search for suspects but for evidence or contraband. As previously stated we do not find record support for defendant's contention that Brand entered the house after the emergency had terminated. That Brand stated he believed there were no other occupants present in the house when he entered does not mean there were none. The record supports the conclusion that when Brand entered other officers were still searching for additional occupants. The nature of the search for suspects made all portions of the house capable of containing a person a legitimate area of search. The officers conducting the search were therefore entitled to seize any evidence in plain view within an area of the house capable of concealing a person.

The question then presented is whether the seizure of items in plain view must be made by the officers coping with the emergency itself or may it be made by an officer whose function it is to seize evidence. The cases which have dealt with "plain view" searches and seizures have referred to the justification for the original intrusion by the police and have not dealt with the specific function of the seizing officer although seizures by officers not engaged in actually coping with the emergency have been upheld. *See Michigan v. Tyler, supra; State v. Epperson, supra.* Nor is it reasonable to limit seizure to those officers coping with the emergency when

the emergency is one imposing danger or a need for quick action on those officers. Here the officers who were searching the house for additional occupants could clearly have seized the heroin in plain view on the dresser. But seizure of evidence requires, as a practical matter, considerable care and time. The requirements of care to avoid contamination and destruction of finger-prints and the time necessary to properly identify and mark the evidence to preserve its admissibility in court cannot practically be accomplished by officers dealing directly with an emergency involving a wounded person or a situation requiring vigilance to avoid personal danger. These very practical considerations warrant the utilization of an officer without responsibility for coping with the emergency itself to seize in a proper fashion evidence and contraband unexpectedly discovered in plain view during the legitimate intrusion occasioned by the emergency situation. Such legitimate law enforcement benefits may properly be considered by courts when balanced against minor perils to Fourth Amendment protections. *Coolidge, supra,* 403 U.S. 467, 91 S.Ct. 2022.

 We do not interpret the term "inadvertent" as used in *Coolidge v. New Hampshire, supra,* to encompass total surprise that evidence or contraband is present, for it is naive in the extreme to believe that police would not expect to find such items during an emergency search of the scene of a crime. Rather the term "inadvertent" is contrasted in *Coolidge* to the circumstance where the discovery of the particular evidence is anticipated, where the police know in advance the location of the evidence and intend to seize it. 403 U.S. l. c. 470, 91 S.Ct. 2022. That is not the situation here. While the police may have suspected that contraband was in the house they could not anticipate it or know of its location. The discovery was inadvertent. The intrusion into the house and the presence of the police in the room where the heroin was located was justified by the emergency. The heroin and paraphernalia were discovered in plain view during that intrusion and were immediately recognized by Officer Brand for what they were.

 Nor do we find that the actions of Brand in searching for evidence not in plain view affects the admissibility of the challenged evidence. The trial court properly suppressed evidence seized by Brand during that part of his search which exceeded the permissible limits under the "plain view" doctrine. The prophylactic purposes found to justify the rule of suppression of otherwise credible evidence are fully satisfied upon suppression of the evidence improperly obtained. That prophylaxis does not require suppression of evidence lawfully obtained. We find no error in the admission of the evidence.

 As a sub-issue to this point, defendant challenges the admission of the shotgun into evidence on relevancy grounds. The gun was admissible to show motive, malice and knowledge as to both the assault and heroin charges. *See, State v. Starks,* 459 S.W.2d 249 (Mo.1970) [1–5]; *State v. Richardson,* 515 S.W.2d 571 (Mo.1974).

 Defendant next contends that the evidence was insufficient to establish possession of the heroin, because the evidence established only joint control. Actual or constructive possession of the controlled substance together with the knowledge of the fact of possession is an essential element which the state must prove. *State v. Burns,* 457 S.W.2d 721 (Mo.1970). The possession need not be exclusive and may be established circumstantially. *State v. Young,* 427 S.W.2d 510 (Mo.1968). Where joint control of a residence in which such substance is found is established there must be other evidence to support the inference of defendant's knowledge of the presence of the substance. *State v. West,* 559 S.W.2d 282 (Mo.App.1977). The record does not make clear whether the bedroom in which the heroin was found was defendant's. But, when the police officers sought to purchase heroin from defendant he replied: "Just a minute, I'll go get them." He further was identified as the person who fired at Jacobsmeyer and Allen. Both his statement and his action inferring guilty knowledge were sufficient additional evidence to support a finding of knowing possession.

*State v. Wiley,* 522 S.W.2d 281 (Mo. banc 1975) [26]; *State v. Stewart,* 542 S.W.2d 533 (Mo.App.1976) [16–19]; *State v. Davis,* 515 S.W.2d 773 (Mo.App.1974) [9].

Defendant's final contention is that the court erred in failing to instruct on the lesser included offenses of assault without malice and common assault. Instructions on lesser included offenses are required only if supported by the evidence. When a deadly weapon is used in making an assault the law presumes malice and that the natural consequences of the act are intended in the absence of countervailing evidence. *State v. Webb,* 518 S.W.2d 317 (Mo.App.1975) [5–6]. Here the evidence establishes that defendant fired two shots at and hit two police officers. His defense was that he was seeking to protect himself from men he believed to be burglars. He received a self-defense instruction. There is no evidence to support an instruction on a lesser degree of assault. The defendant was either guilty of assault with malice aforethought or he was not guilty on the basis of self-defense. *State v. Webb, supra,* [7].

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.