**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Ronnie David DETHROW,
Defendant-Appellant.**

No. 45964.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 26, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 8, 1984.

Application to Transfer Denied
Sept. 11, 1984.

John Ashcroft, Atty. Gen., Janet T. Papageorge, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Almond & Williams, Hillsboro, for defendant-appellant.

SIMON, Judge.

Ronnie David Dethrow (Dethrow) appeals his conviction on five counts of possession of controlled substances following a jury trial in the Circuit Court of Jefferson County. On appeal, he contends the trial court erred in: (1) failing to direct a verdict of acquittal at the close of all the evidence because the evidence was insufficient to support the verdict; (2) excluding the testimony of Dethrow's witness since the evidence was relevant and material; (3) failing to give a circumstantial evidence instruction; and (4) submitting a definition instruction on possession which is broad and general in nature, and failed to instruct the jury properly on the applicable law. We affirm in part and reverse in part.

On December 1, 1980, police officers of the Jefferson County Sheriff's Department, the City of St. Louis Police Department and St. Louis County Police Department went to a mobile home where Dethrow resided in order to execute a search warrant. The officers approached the mobile home, knocked on the door, announced their identity and the purpose of their visit, but there was no response from inside the trailer.

Before the officers entered the premises, a man and a woman in a car, were seen hurriedly pulling away from the location of the mobile home. The woman, later identified as Nana Hart (Hart), was driving and the man, later identified as Dethrow, was in the front seat. Three police officers, in a marked police car, followed the car to the parking lot of a grocery store. The officers approached the car but there was no one in it and it was locked. Dethrow walked up to the officers and said, "Here I am. I'm the one you're looking for" and he voluntarily entered the back seat of the police car. The police officers requested Dethrow get out of the car at which time he was frisked and was advised of his *Miranda* rights. The officers then asked for keys to the car in order to inspect it, but Dethrow did not have the keys, Hart

did. Hart was escorted out of the grocery store by the officers and at their request, Hart drove the car after it was searched, to the mobile home. Dethrow was also taken to the mobile home and informed that officers were executing a search warrant.

Police officers, who had remained at the mobile home, forced their entry into and proceeded to search the residence for controlled substances. Pursuant to the search, the following items were found in a jewelry box located on the top of a dresser in the mobile home's master bedroom: oxycodone or percodone (Count I); benyphetamine or Upjohns (Count III); pentazocine or Talwin (Count IV); marijuana; a Missouri Uniform Traffic Ticket issued by the City of Times Beach to Dethrow; an insurance check payable to Dethrow from Ford Life Insurance; and some jewelry belonging to Dethrow and Hart. Two small bottles containing phenobarbital (Count V) and amobarital (Count II) and some needles were found in the vanity under the bathroom sink. In addition, a small scale was found in the master bedroom and some marijuana and cigarette papers were removed from beneath the couch.

When Dethrow arrived at the mobile home, he asked to speak with Officer Joseph Mokwa with whom he was acquainted. Officer Mokwa handed him a copy of the search warrant and after Dethrow read the warrant he said, "Did you find any Dilaudid? I don't think you will. I know what I had and I didn't have any D's. I had some Upjohns and Talwin, Schedule III and IV stuff." After the search was completed, an officer read the warrant aloud to Dethrow, informed him that he was under arrest for suspicion of possession of controlled substances and advised him of his *Miranda* rights. Dethrow and the items seized were taken to the Jefferson County Sheriff's Department.

Hart, with whom Dethrow had co-habitated at the mobile home, testified at trial. Hart testified that she moved into the mobile home in July of 1980 and at that time she noticed the two bottles containing the substances described in Counts V and II

above. Hart believed they were left by a former resident so she allowed them to remain in the vanity. She also testified Dethrow did not move in with her until about four weeks later. Hart said some of the controlled substances found in her jewelry box were her medications and were legally obtained.

On the first day of trial, after the jury was sworn in, defense counsel attempted to endorse Wilma Landers (Landers) as a witness. Landers is a friend of Dethrow and Hart. This was the first time the state heard of this witness and objected to her endorsement, claiming that the endorsement at such a late time imposed a great burden on the state. Defense counsel said the late endorsement of Landers was due to the fact that he had first talked to her on Monday, the morning of the trial, after learning about her from Dethrow or Hart on Saturday. After an offer of proof, the trial court sustained the state's objection and excluded Landers' testimony.

Dethrow was found guilty on all five counts and was sentenced to serve concurrent terms of imprisonment of thirty (30) years for Count I, thirty (30) years for Count II, fifteen (15) years for Count III, fifteen (15) years for Count IV and fifteen (15) years for Count V.

Initially, we shall address Dethrow's second point because it's dispositive of Counts II and V.

Dethrow contends the trial court erred in excluding the testimony of Landers because her testimony was relevant and material and he was prejudiced by its exclusion. The state argued that Landers' endorsement at such a late time was a violation of Rules 25.05(A)(2) and 25.08 (1982). The defense counsel offered the state an opportunity to speak with Landers and the court reserved judgment on whether to allow her endorsement until after such time. The state questioned Landers but she replied, "I'll do my testifying in court." At this point the prosecutor called Detective Gober, who had already been endorsed as a witness in this case, into the room to witness Landers' intention to do her talking in

court. The court recessed for the day and that evening the state checked on Landers' criminal history and discovered she had been charged with not having a city sticker for the City of St. Louis. She was arrested that same evening and released after it was determined there had been a computer error. The next day an offer of proof was made out of the presence of the jury.

The testimony of Landers elicited during the offer of proof revealed that the substances named in Counts II and V and found in the vanity under the sink were observed by Landers while she was living in the mobile home and were left there by her when she moved out. Landers had occupied the mobile home before Hart rented it.

The trial court sustained the state's objection that Landers was not properly endorsed as a witness as required by Rules 25.05(A)(2) and 25.08 (1982). Accordingly, pursuant to Rule 25.16 (1982) the court ruled that Landers' testimony be excluded. The basis of the trial court's ruling was that her endorsement would be an unfair burden on the state and her testimony was cumulative and corrobative of Hart's.

Rule 25.05(A)(2) provides that upon request by the state the defendant shall disclose names and addresses of witnesses he intends to call at trial along with a summary of their statements. Pursuant to Rule 25.08, the duty to disclose is a continuing one remaining throughout the trial.

■ "When non-compliance with the applicable discovery rule is brought to the attention of the court, the trial court is given the discretion..." to impose sanctions. *State v. Mansfield*, 637 S.W.2d 699, 703 [1] (Mo. banc 1982). The choice of what sanction to impose is solely within the sound discretion of the trial court. In *Mansfield*, supra, the trial court, as a sanction excluded testimony of an alibi witness that had not been previously disclosed. Our Supreme Court found the testimony to be relevant and material, stating that, "[t]he remedy of disallowing the relevant and material testimony of a defense witness essentially deprives the defendant of

his right to call witnesses to his defense." *Id.* at 703 [2]. The court found that the trial court had abused its discretion. On appeal, the issue is whether the trial court's action results in fundamental unfairness to Dethrow.

■ In determining whether the application of the sanction resulted in fundamental unfairness, we keep in mind that errors committed in criminal proceedings are presumed to be prejudicial, but that presumption is not conclusive and may be overcome by the facts and circumstances of the particular case. *Burton v. State*, 641 S.W.2d 95, 99 [1–5] (Mo. banc 1982); *State v. Bashe*, 657 S.W.2d 321, 325 [2] (Mo.App. 1983).

■ In the present case, Landers' testimony in the offer of proof that the drugs named in Counts II and V were in the mobile home before Hart moved in, tends to negate Dethrow's knowledge of the drugs and thus his culpability as to Counts II and V. Although the testimony was cumulative and corrobative of Hart's testimony, it was of greater significance. Landers, unlike Hart, was not personally involved with Dethrow. The state examined Landers by conducting extensive cross-examination during the offer of proof and investigating her criminal background. Thus, the state was not overburdened. We find the proposed testimony of Landers to be relevant and material, and the trial court's exclusion of this testimony resulted in fundamental unfairness to Dethrow. The trial court's action deprived the jury of the opportunity to hear it. Consequently, Counts II and V are reversed and remanded for retrial consistent with this opinion.

In Dethrow's first point on appeal, he contends the evidence was insufficient to support the verdict. Essentially, he claims the evidence does not establish his knowing and intentional possession.

■ The state has the burden to establish, beyond a reasonable doubt, that Dethrow had knowledge of the presence and character of the substances and actual or

constructive possession of them. *State v. McCurry*, 587 S.W.2d 337, 341 [11–14] (Mo. App.1979).

In this case, knowledge and intent to possess are proved by direct and circumstantial evidence. Where the conviction is based on circumstantial evidence, we consider only those operative facts and inferences favorable to the state. *State v. Franco*, 544 S.W.2d 533, 534 [1–4] (Mo. banc 1976). However, to affirm a conviction based on such evidence, the facts and circumstances must be consistent with each other, consistent with a finding of guilt and inconsistent with any hypothesis of innocence. It is not necessary that the facts and circumstances demonstrate the absolute impossibility of innocence or be absolutely conclusive of appellant's guilt to justify upholding the jury's verdict. *Franco*, supra.

Where joint control of a residence exists, possession can be constructive and need not be exclusive. Dethrow's knowledge of the presence, nature and possession of the substances may be proven circumstantially. *McCurry*, at 341 [11–14]. Independent factors sufficient to show his knowledge and possession can include evidence of his conduct and mannerisms including any declarations, admissions, contradictory statements and explanations made by him, as well as his access to the area where the contraband was found and the quantity of the substances seized. *State v. Stewart*, 542 S.W.2d 533 [16–19] (Mo.App.1976); *McCurry*, at 341 [11–14].

The record reveals that after the police followed Dethrow and Hart to the grocery store, Dethrow approached the police and said, "Here I am. I'm the one you are looking for." Dethrow voluntarily placed himself in the back seat of the patrol car and was taken back to his residence where the other officers were conducting a search. After the search, he was handed a copy of the search warrant and Dethrow said, "Did you find any Dilaudid? I don't think you will. I know what I had and I didn't have any D's. I had some Upjohns and Talwin, Schedule III and IV stuff."

During the search, Upjohns (Count III); Talwin (Count IV) and oxycodone (Count I) were found in a jewelry box. In the same jewelry box there was a traffic ticket issued to Dethrow, an insurance check payable to Dethrow and several items of jewelry belonging to him. Dethrow's admission, therefore, provided the requisite knowledge of the presence and nature of the Upjohns (Count III) and Talwin (Count IV). The presence of these drugs, admittedly possessed by Dethrow, along with the presence of his check, ticket and jewelry inferred Dethrow's access to and control over the jewelry box.

Dethrow's admission, his voluntarily entering the police car and the presence of the oxycodone (Count I) among the drugs he admitted to possessing which were found with his other belongings, is sufficient circumstantial evidence to support the jury's finding of Dethrow's possession of oxycodone (Count I).

In summary, we find there was sufficient evidence to support the jury's verdict. Judgments as to Counts III and IV are affirmed and judgment as to Count I will be disposed of in point three below.

In his third point of error, Dethrow contends the trial court's refusal to submit his requested instruction on circumstantial evidence patterned after MAI–CR2d 3.42 was erroneous. Essentially, Dethrow contends that the state presented only circumstantial evidence of his possession and control over the substances named in Counts I, II and V and that his admission of the presence and nature of the substances named in Counts III and IV is only direct evidence of possession and not control; therefore, control could only be shown by circumstantial evidence. Dethrow's argument has no merit, his statement made to Officer Mokwa, "I had some Upjohns (Count III) and Talwin (Count IV) ..." constituted direct evidence of Dethrow's knowledge, possession and control of these substances. *State v. Williams*, 600 S.W.2d 120, 122 [2–5] (Mo.App.1980). As a result, the trial court's refusal to submit a circum-

stantial evidence instruction regarding Counts III and IV was not erroneous.

■ However, as to Counts I, II and V, we find the evidence presented at trial was wholly circumstantial. When the evidence adduced at trial is wholly circumstantial, it is mandatory that a circumstantial evidence instruction be given, if requested. *State v. Watson*, 588 S.W.2d 20, 23 [4] (Mo.App.1979). Here, the circumstantial evidence instruction was requested and the trial court failed to instruct, resulting in error. Rule 28.02(e). We reverse Count I on this point, and remand for retrial consistent with this opinion.

As his final point, Dethrow contends the trial court erred in submitting Instruction No. 5 (not in MAI) defining the terms "possessed" and "possessing" as used in the verdict directors (Based on MAI 32.14 and 32.06). Dethrow argues that the definition used was too broad and general in nature, and allowed the jury to impute possession without requiring a finding of circumstances in addition to joint control.

The Notes on Use under the verdict directors submitted in this case mandate "possession" must be defined upon written request by either party. The trial court gave the definition instruction submitted by the state, as follows:

Possessed and possessing.

Means having the actual control, care, and management of something to the exclusion of persons other than the possessor or possessors and the possession is not a mere passing control, fleeting and shadowy in its nature. In order to prove the alleged offense the evidence need not show actual physical possession on the part of the defendant. It is not necessry to prove ownership in order to prove possession and more than one person can be in possession at the same time.

■ The submitted verdict directors instructed the jury that they must find Dethrow knew he possessed the substance and was aware of the character of the substance. Reviewing all the instructions to-

gether, the jury was informed that mere joint control of the premises alone is not sufficient to justify a finding of possession. Furthermore, the language used to define "possessed" and "possessing" is patterned after definitions of "possession" approved in *State v. Norris*, 460 S.W.2d 672, 677 [5] (Mo. banc 1970); *State v. Sledge*, 471 S.W.2d 256, 260–261 [4] (Mo.1971). Thus, the instruction given was not erroneous.

The judgments as to Counts III and IV are affirmed. The judgments as to Counts I, II and V are reversed and remanded for retrial consistent with this opinion.

CRIST, P.J., and PUDLOWSKI, J., concur.