STATE of Missouri, Respondent,

v.

Billy R. MAYS, Appellant.

Billy R. MAYS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 46433, WD 48737.

Missouri Court of Appeals,
Western District.

Oct. 4, 1994.

Laura G. Martin, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Billy R. Mays appeals the judgment of conviction, following jury trial, for two counts of sale of a controlled substance (phencyclidine), a class B felony, section 195.211, RSMo Supp.1993; and one count of possession of a controlled substance (phencyclidine), a class C felony, section 195.202, RSMo Supp.1993. Mr. Mays was sentenced to fifteen years incarceration for each of the two counts of sale of a controlled substance and seven years incarceration for possession of a controlled substance, the sentences for selling a controlled substance to be served consecutively to each other and concurrently with the sentence imposed for possession of a controlled substance. Mr. Mays also appeals the denial of his postconviction Rule 29.15 motion without an evidentiary hearing.

The judgment of conviction is affirmed. The judgment denying the Rule 29.15 motion is affirmed.

Detectives Michael Quinlan and Jon Cisper, Kansas City, Missouri, Police Department, drove to a house in Kansas City, Missouri, at approximately 11:20 p.m. on March 15, 1991. Detective Quinlan was provided entrance into the house by Clyde Betts. Detective Cisper remained in the unmarked vehicle which had provided transportation for the two detectives.

Mr. Betts asked Detective Quinlan what he wanted, and Detective Quinlan, using street vernacular, stated that he wanted to buy "water" (phencyclidine; PCP). Detective Quinlan handed Mr. Betts a brown vial, and Mr. Betts poured a liquid from a vanilla bottle into the brown vial and handed it to Detective Quinlan. Detective Quinlan then gave $30 to Mr. Betts, the serial numbers of which had been prerecorded.

Detective Quinlan departed the house and entered the vehicle where his partner waited. The vial was placed into a plastic envelope that was then heat sealed. The envelope containing the vial was later taken to the regional crime laboratory in Kansas City for analysis.

Detectives Quinlan and Cisper returned to the same house at approximately 7:00 p.m. on March 20, 1991. After arriving at the house,

Mr. Betts approached the two detectives and asked what the men "needed." Detective Quinlan said in street vernacular he wanted to purchase PCP. Mr. Betts told him to wait and entered the house. Approximately half a minute later, he and two other males exited the house and walked to a truck parked near the house. One of the men accompanying Mr. Betts held a .38 caliber revolver in his hand.

Mr. Mays, one of the men present, began to question the two detectives. He asked them if they had been to the residence before, how they learned about the place, and other questions. After a short dialogue, Mr. Mays then said, "Go ahead and serve them."

The purchase of PCP by the detectives proceeded. Detective Quinlan was asked if he brought a vial, and Detective Quinlan handed Mr. Betts a small vial. Mr. Betts reentered the residence, followed by the unknown male with the revolver. Approximately two minutes later, Mr. Betts returned and handed Detective Quinlan a brown vial full of a liquid. Mr. Betts was given $30 of which the serial numbers had been prerecorded. The two detectives left the scene, placed the vial in a heat sealed plastic envelope, and later placed the vial in the unit's vault to be sent to the regional crime laboratory.

The following week the two detectives again returned to the house to purchase PCP. They spoke to Mr. Betts, who told the officers that PCP was unavailable at that time but that additional PCP was expected.

The two detectives again went to the residence on March 28, 1991, to purchase contraband. They were admitted to the residence by an unknown male whom they had not seen during the prior transactions. This person asked the detectives what they wanted, and they responded that they wanted to purchase PCP. This man looked to Mr. Mays, who was then seated on a couch inside the room. Mr. Mays approved the sale, saying, "He is all right. Go ahead." Mr. Mays asked, "How many gallons do you need?" He laughed, and Detective Quinlan handed a brown vial to the unknown male, later identified as Don Sherman. Mr. Sherman took the vial and filled it with a liquid from a brown vanilla bottle. He handed the filled vial to Detective Quinlan. Detective Quinlan gave Mr. Sherman $30, the serial numbers of which had been prerecorded.

The undercover detectives exited the building after the sale. A few minutes later, members of the police department "tactical entry squad" executed a search warrant for the house. Mr. Mays was arrested at the scene and later charged. After his arrest, Mr. Mays identified the house as his residence.

Mr. Mays' person was searched at the house when he was arrested. When searched, he possessed $616 in cash, $30 of which was the money used by the detectives to purchase the PCP several minutes before the search warrant was effected. A brown bottle containing PCP was also removed from Mr. Mays' person during the search.

The officers conducting the search of the house found several other items of evidence. The officers found four more bottles of PCP, a bag containing a "green leafy substance and seeds" (later identified as marijuana), a Mossberg .410 shotgun, and $225 in cash.

## I

■ As his first point on appeal, Mr. Mays contends that the trial court erred in refusing to grant a mistrial when a state's witness stated that a .410 Mossberg shotgun was recovered during the March 28, 1991, search of 5233 East 49th Street, where Mr. Mays was arrested, because the shotgun had no probative value, unfairly inflamed the jury, and prejudiced Mr. Mays. Mr. Mays notes that the trial court had sustained his motion in limine to preclude disclosure to the jury that the .410 shotgun had been seized at the residence when Mr. Mays was arrested.

A police officer who had participated in the search of the house where Mr. Mays was arrested testified that in addition to $616 in cash, $30 of which was serial number recorded money used by detectives to buy PCP at the location, and other items, a "Mossberg .410 shotgun" was discovered when he was asked whether "anything else" was recovered during the search. The trial court overruled Mr. Mays motion for a mistrial but sustained

his objection to the officers response and immediately instructed the jury to disregard the officer's answer regarding the shotgun.

The state claims the shotgun was properly admissible despite the trial court's ruling and admonition to the jury to disregard the police officer's statement. Therefore, reasons the state, the officer's comment that the weapon was found at Mr. Mays' residence when arrested could not have been prejudicial and the trial court properly denied Mr. Mays' motion for mistrial.

The state cites *State v. McCurry,* 587 S.W.2d 337, 341 (Mo.App.1979), in support of its argument. *McCurry* presents a defendant who had fired shots at two undercover police officers who attempted to purchase heroin from the defendant by knocking on the front door of a house the defendant was then occupying. Police officers outside the house began shooting at the two persons within the house. The occupants of the house surrendered, and police officers entering the house observed heroin, a pistol, and a shotgun in plain view. The pistol was demonstrated to have been the weapon from which a round had been fired that struck one of the undercover police officers who initially had knocked at the front door of the house. The state charged two counts of assault and one count of possession of a controlled substance for the heroine found in the house. The defendant objected to introduction of the shotgun as being irrelevant. Although acknowledging that he shot at the two undercover police officers, the defendant claimed that he thought the officers were burglars trying to force entry. The Eastern District stated the shotgun "was admissible to show motive, malice and knowledge as to both the assault and heroin charges." *Id.*

Mr. Mays' defense was the general denial of the charges. The state alleged, as one of the charged counts, that the sale of a contraband drug had occurred within minutes of entry into the house by police officers and the discovery of the shotgun. The state was compelled to prove each of the elements of the offenses charged, including Mr. Mays' knowledge that the substance sold was phencyclidine. Although the defendant in *McCurry* was prosecuted for the heroin

found in the house after the police made entry making relevant the presence of the shotgun found in the house to show "motive, malice and knowledge", the location and the time of the sale in this case immediately before police entry into the house and discovery of the shotgun make applicable the rationale applied in *McCurry.* The presence of the shotgun is relevant to show that the defendant knew the substance sold immediately prior to police entry into the house was the contraband phencyclidine.

Point I is denied.

## II

■ Mr. Mays claims as point II on appeal that the trial court committed plain error in allowing Detective Samuel Burrows to testify as an expert in the field of narcotics because no showing was made that the jury, as the trier of fact, was incapable of making its own conclusions from the facts proved; Detective Burrows' testimony did not aid the jury; and Detective Burrows' testimony invaded the province of the jury. Detective Burrows testified, without objection, about the production of PCP in clandestine labs in California, the various forms of PCP and purity levels, the way in which phencyclidine is sold, the price of phencyclidine, and about other questions pertaining to PCP. Therefore, Mr. Mays is limited to relief pursuant to Rule 30.20. Rule 30.20 provides in part, "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

In *State v. King,* 865 S.W.2d 845 (Mo.App. 1993), a similar situation was presented. The state's detective expert witness testified without objection concerning cocaine. *Id.* at 847. The testimony occurred when paraphernalia taken from the defendant when he was arrested was shown to the expert witness who was then asked "what [it] would indicate to [him.]" *Id.* The detective said, "This would be consistent with someone who is either involved in distribution, taking drugs from one place to another, or actually involved in the sale of drugs themselves." *Id.* Recognizing that trial judges have much discretion in determining whether expert tes-

timony is appropriate, the court stated that neither abuse of discretion nor plain error were demonstrated. *Id.*

Like *King,* neither abuse of discretion nor plain error are demonstrated in this case. Point II is denied.

## III

■ Mr. Mays contends as his third point on appeal that the trial court committed plain error in failing to declare a mistrial or, alternatively, in failing to instruct the jury to disregard a specific statement by the prosecutor during closing argument. Specifically, Mr. Mays claims that the Assistant County Prosecutor's statement during her closing argument that the jury should quote "punish this man, and ... send a message to people that they cannot operate these drug houses," was plain error.

Mr. Mays neither objected to the remark when it was made by the prosecutor during closing argument, nor included the issue in his motion for a new trial. Thus, he is limited to relief pursuant to "the plain error rule," Rule 30.20.

In *State v. Cobb,* 875 S.W.2d 533 (Mo. banc 1994), *petition for cert. filed,* 63 U.S.L.W. 3265 (U.S. July 25, 1994) (No. 94–5340), the Missouri Supreme Court noted "[r]elief should be rarely granted on assertion of plain error to matters contained in closing argument, for trial strategy looms as an important consideration and such assertions are generally denied without explanation." *Id.* at 537 quoting *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986). However, the Supreme Court in *Cobb* stated that "A prosecutor may legitimately argue that the jury should 'send a message' that criminal conduct will not be tolerated or should be severely punished." *Id.*

Therefore, the assistant prosecutor's closing argument being proper, plain error did not result in the trial court failing to declare a mistrial or alternatively in failing to instruct the jury, sua sponte, to disregard that portion of the assistant prosecutor's closing argument asking that the jury "send a message" to the community. Point III is denied.

## IV

Mr. Mays' fourth point on appeal contends plain error in the trial court having submitted to the jury a preliminary instruction (MAI–CR 3d 300.02) and the reasonable doubt instruction (MAI–CR 3d 302.04). He claims that both of the instructions defined "reasonable doubt" errantly, allowing the jury to convict him of the crimes charged utilizing a standard less than "beyond a reasonable doubt," violating his rights to a fair trial and to due process of law in violation of fifth, sixth, and fourteenth amendments of the United States Constitution. The language complained of in both instructions regarding "reasonable doubt" is exactly the same, "[p]roof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt." MAI–CR 3d 300.02; MAI–CR 302.04.

■ Mr. Mays failed to object to the instructions at trial, and he did not raise the issue in his motion for a new trial. "[F]ailure to register an appropriate objection with the trial court at the instruction conference or in the motion for new trial" waives the point on appeal. *State v. Scott,* 858 S.W.2d 282, 286 (Mo.App.1993). Mr. Mays, therefore, waived any objection to the instructions he may have had. *Id.* He seeks plain error relief pursuant to Rule 30.20.

■ The Missouri Supreme Court has rejected Mr. Mays' argument that the "firmly convinced" language erroneously defines "reasonable doubt." In *State v. Harris,* 870 S.W.2d 798, 811 (Mo. banc 1994), the Court noted that many recent cases emanating from the Court have held that the language of MAI–CR 3d 302.04 regarding the definition of "reasonable doubt" is not violative of a defendant's constitutional rights. *Id.* at 811.

This court is compelled by the Missouri Constitution to comport with the legal opinions of the Missouri Supreme Court. *State v. Dale,* 874 S.W.2d 446, 454 (Mo.App.1994); *State v. Bragg,* 867 S.W.2d 284, 295 (Mo.App. 1993). Therefore, *Harris* is controlling, and Mr. Mays' contention is without merit. Point IV is denied.

## V

Mr. Mays appeals the denial of his Rule 29.15 postconviction motion. He claims the trial court erred in denying his motion without an evidentiary hearing, contending that his pleaded factual assertions were not refuted by the record, and, if proven, would warrant relief. Rule 29.15(g). Mr. Mays claimed that his trial attorney failed to exercise the requisite customary skill and diligence that a reasonably competent attorney would exercise under the same or similar circumstances by failing to: (1) investigate the case against him and call an expert witness to testify that he was suffering from post-traumatic stress and sleeping disorders when he was arrested on March 28, 1991, and that he was manifesting consequences of these disorders and not signs of phencyclidine ingestion; (2) object to Detective Burroughs' expert testimony about phencyclidine because his testimony did not aid the jury and invaded the province of the jury; and (3) object to that portion of the state's closing argument that urged the jury to "send a message to the community" when the jury sentenced Mr. Mays.

■ Appellate court review of the denial of post-conviction motions is limited to determining whether the findings and conclusions of law issued by the motion court are clearly erroneous. *State v. Nolan,* 872 S.W.2d 99, 104 (Mo. banc 1994). Findings of fact and conclusions of law are clearly erroneous if after review of the entire record the reviewing court is left with the definite impression that a mistake has been made. *Id.*

■ Rule 29.15(g) provides that to receive a hearing, a movant must timely request a hearing, and (1) allege facts which, if true, entitle him to relief; (2) the case record does not refute the facts alleged; and (3) the alleged facts must have resulted in prejudice to the movant. *State v. Brasher,* 867 S.W.2d 565, 570 (Mo.App.1993. However, a movant is not entitled to a hearing if the record as a whole demonstrates the alleged derelictions were a part of trial strategy. *State v. Young,* 844 S.W.2d 541, 548 (Mo.App.1992).

■ Mr. Mays claims dereliction by his trial attorney in breach of the minimum standard for proficiency in violation of his federal constitutional sixth and fourteenth amendment rights because his trial attorney did not call an expert to testify about alleged maladies which accounted for his appearance and physiological responses when he was arrested. However, Mr. Mays failed to identify an available expert witness who could have testified that he experienced the maladies alleged and their specific derogatory impact on him at the time he sold PCP to an undercover police officer. Additionally, although Mr. Mays' appearance and his conduct at the time he sold contraband were relevant to the charge, the expert testimony Mr. Mays asserts should have been offered at trial would not have presented a viable defense to the charged offense. Therefore, the omitted expert testimony Mr. Mays claims should have been presented at trial would not entitle him to relief because the testimony would not have changed the result of his trial; and, therefore, he was not prejudiced.

■ Mr. Mays claims his trial attorney's failure to object to Detective Burroughs' expert testimony regarding the manufacture, sale, and uses of phencyclidine, and the portion of the assistant prosecutor's closing argument arguing that the jury send a message to the sellers of contraband that the illegal sale of controlled drugs will not be tolerated in the community, constitutes a breach of the minimum standard of professional conduct entitling him to postconviction relief and a new trial. These issues have been addressed, and Mr. Mays claims are without merit.

Point V is denied.

The judgment of conviction is affirmed. The judgment denying the Rule 29.15 postconviction motion is affirmed.

All concur.